288 N.W.2d 549 (1980)
In the Matter of the ESTATE OF Cecelia C. SIMON, Deceased.
Hubert K. SIMON and Margaret Crane, Appellants,
v.
R. Richard BITTNER and First Trust & Savings Bank, Executors, Appellees.
No. 63474.
Supreme Court of Iowa.
February 20, 1980.
Hubert K. Simon, Yonkers, N. Y., for appellants.
Robert D. Lambert of Betty, Neuman, McMahon, Hellstrom & Bittner, Davenport, for appellees.
Considered by REES, P. J., and UHLENHOPP, McCORMICK, ALLBEE, and McGIVERIN, JJ.
UHLENHOPP, Justice.
This appeal involves the propriety of the amount of a fee allowed an individual who served as an attorney for the executors and as co-executor of the decedent's estate. See §§ 633.197, 633.198, The Code 1979. The first of those sections provides:

*550 Personal representatives shall be allowed such reasonable fees as may be determined by the court for services rendered, but not in excess of the following commissions upon the gross assets of the estate listed in the probate inventory for Iowa inheritance tax purposes, which shall be received as full compensation for all ordinary services:
For the first one thousand dollars, six percent;
For the overplus between one and five thousand dollars, four percent;
For all sums over five thousand dollars, two percent.
The other section provides:
There shall also be allowed and taxed as part of the costs of administration of estates as an attorney's fee for the personal representative's attorney, such reasonable fee as may be determined by the court, for services rendered, but not in excess of the schedule of fees herein provided for personal representatives.
The Code also provides in section 633.199:
Such further allowances as are just and reasonable may be made by the court to personal representatives and their attorneys for actual necessary and extraordinary expenses or services. Necessary and extraordinary services shall be construed to also include services in connection with real estate, tax matters, and litigated matters.
These sections are founded on quantum meruit; personal representatives and their attorneys are entitled to the reasonable value of their ordinary services not exceeding the specified percentages, and to the reasonable value of their extraordinary services, if any. In re Estate of Engelkes, 256 Iowa 213, 218-19, 127 N.W.2d 111, 114 (1964); Glynn v. Cascade State Bank, 227 Iowa 932, 937-38, 289 N.W. 722, 724-25 (1940).
Cecelia C. Simon died leaving an estate having a value in excess of $340,000, and a will appointing Attorney R. Richard Bittner as executor. In her will she gave $300 to a church and her jewelry and certain bank shares to her stepdaughter, Margaret Crane. The jewelry and shares were worth altogether about $51,500. Testatrix gave the residue of her property to her stepson, Hubert K. Simon, who is an attorney in Yonkers, New York, and to Margaret Crane.
Mr. Simon and Mrs. Crane visited Mr. Bittner after testatrix' demise. Mr. Bittner told them that administration of the estate would entail handling considerable money, which he did not care and was not equipped to do. He also told the beneficiaries that as sole executor he would have to post a surety bond notwithstanding that testatrix waived bond in the will. See Iowa Sup. Ct.R. 121.5(a). He contracted two bonding companies at the time and found that the annual premium on a bond would be a substantial amount. To avoid this expense, and for handling the estate funds, he recommended that the First Trust & Savings Bank be appointed co-executor. He informed Mr. Simon and Mrs. Crane that the fee of the bank would be two percent of the value of the assets, as would his fee also. He made this professional statement to the probate court at a later hearing on his fee:
Q. Do you recall specifically mentioning at your retention in your office that your services would be approximately two percent of the estate? A. I advised them that the statutory fee for attorneys was two percent and the statutory fee for the bank was two percent and that is what they would be expected to pay.
After the beneficiaries' conference with Mr. Bittner, the probate proceeding went forward. The probate court appointed Mr. Bittner and the bank as co-executors, the assets were gathered, inventoried, and liquidated so far as necessary, the state and federal inheritance tax returns were made and accepted, and the taxes were paid. The bank made and furnished the beneficiaries a computer printout of monetary transactions.
In the course of the proceedings Mr. Bittner was able to save the estate approximately $6500 in taxes by obtaining a reduction in the valuation of stock in a closely-held *551 corporation. Bond premiums were saved by having the bank serve as co-executor. Mr. Bittner also carried out considerable negotiations for the sale of certain real property in the estate, and completed that transaction. He sought no extraordinary compensation for the real estate work, or for tax work in which he participated.
In their final report Mr. Bittner and the bank each asked for "statutory" fees. As we understand the case, Mr. Bittner's fee would compensate him in full for both his legal and fiduciary services and for both ordinary and extraordinary work, if the real estate and tax work are considered to be extraordinary. Attached to the final report was Mr. Bittner's itemized statement of services, running over eight pages.
Mr. Simon and Mrs. Crane did not dispute the bank's fee, but they objected to the fee Mr. Bittner asked. The probate court held a hearing and allowed a fee to Mr. Bittner which appears to equal two percent of the value of the estate assets plus $120, or $6936.89. The beneficiaries appealed.
We understand the probate court's decision to hold that the court allowed the amount of the fee to Mr. Bittner on two bases: the beneficiaries agreed to the fee at the outset, and the services were reasonably worth the amount the court allowed. In their brief the beneficiaries contend that the court erred (a) in finding that they agreed to pay two percent, (b) in holding that the percentages in the statute constitute a "mandatory fee," and (c) in concluding that Mr. Bittner's services were reasonably worth the amount allowed.
We review appeals of this nature de novo, § 633.33, The Code, but we give weight to the trial court's fact findings, especially on credibility, although we are not bound by them. Basic Chemicals, Inc. v. Benson, 251 N.W.2d 220, 226 (Iowa 1977).
I. With a proviso we will consider later, we find no necessity to determine whether the beneficiaries agreed to pay two percent. Regarding fee agreements between attorneys and beneficiaries where the rights of estate creditors and individuals under legal disability are not involved, see In re Matter of the Estate of Rorem, 245 Iowa 1125, 1142-43, 66 N.W.2d 292, 302 (1954), and In re Estate of Hale, 231 Iowa 1018, 1023-25, 2 N.W.2d 775, 778-80 (1942). If the reasonable value of Mr. Bittner's services had been less than two percent, then the question would be important as to whether a contract for two percent existed. We will approach the question of the reasonable value of the services in due course.
II. We do not find merit in the beneficiaries' second contention that the probate court found the "statutory fee" to be mandatory. To the contrary, the court stated in its decision:
The statutory fee allowed for executors and attorneys in Iowa is, as the objectors point out, not a mandatory fee but a maximum fee for the customary work in estates.
We repeat what this court has previously stated that in Iowa we do not have a "statutory fee" of certain percentages of estate assets. The Iowa statutory probate fee is the reasonable value of the services rendered. The statutory percentages come into play only as the ceiling on fees for ordinary services. After quoting the sections in question, this court stated in the case of In re Estate of Lindell, 220 Iowa 431, 433, 262 N.W. 819, 820 (1935):
The appellant mistakenly assumes that the administrator is entitled, under the statute quoted, to the percentages therein fixed, but we cannot agree with the appellant's interpretation of the statute. The language of the statute is plain and unambiguous and permits no construction other than is indicated by the plain and definite language of the section. The section provides that administrators shall be allowed such reasonable fee as may be determined by the court, not in excess, however, of the percentages indicated in the section. And section 12065 provides that just and reasonable compensation may be allowed by the court for extraordinary expenses or services.
See also, Engelkes, 256 Iowa at 218, 127 N.W.2d at 114.
*552 In determining a "reasonable" amount for a legal fee, a probate court may of course consider as a factor among others the size of the estate. For one thing, the size of an attorney's own exposure to liability depends to a considerable extent upon the size of the matter he is handling. Cameron v. Montgomery, 225 N.W.2d 154, 155 (Iowa 1975) (liability for $28,667.39 estate tax assessment, for failure to use alternate valuation date). In endeavoring to ascertain a reasonable legal fee, relevant factors include the time necessarily spent by the attorney, the nature and extent of the service, the amount involved, the difficulty of handling and the importance of the issues, responsibility assumed, results obtained, and the experience of the attorney. See Parrish v. Denato, 262 N.W.2d 281, 285 (Iowa 1978); Gabel v. Gabel, 254 Iowa 248, 251, 117 N.W.2d 501, 503 (1962); 7 Am. Jur.2d Attorneys at Law §§ 236-44 (1963); 7 C.J.S. Attorney & Client § 191, at 1078-89 (1937). See also, Iowa R. Prob.P. 2 (effective November 14, 1979).
III. We thus turn to the beneficiaries' final contention that we should overturn the court's finding Mr. Bittner's services were reasonably worth two percent of the estate plus $120 or $6936.89.
As to probate court fee allowances, this court stated in Glynn, 227 Iowa at 939, 289 N.W. at 725 (citations omitted):
To a considerable extent the compensation of an attorney rests in the discretion of the court. Yet, as stated, this must be a reasonable degree of discretion.
The probate court had before it the file showing the proceedings in the estate as well as Mr. Bittner's itemized statement of his services. Mr. Bittner also made an extensive professional statement on record to the court, and was cross-examined. See State v. Brewer, 247 N.W.2d 205, 212 (Iowa 1976). The bank's trust officer, of substantial experience, gave evidence and was cross-examined. He stated inter alia that he told the beneficiaries' New York attorney he felt from past experience the attorney fee was "reasonable and just" and "I did not feel that I could, in all conscience, ask the attorney to reduce his fee." He also stated he felt "it was just not right to try to cut it down."
The beneficiaries presented two affidavits, but Mr. Bittner objected to them as hearsay since the affiants were not available for cross-examination.
We have reviewed the file of the probate matter and the transcript of the hearing, and have considered the arguments in the briefs. Having in mind the principles quoted from Gabel, we are not prepared to say the probate court exceeded its discretion in finding the value of Mr. Bittner's services as it did. We thus reject the beneficiaries' third contention.
We have one problem, however, with the court's order. Although the matter is not completely clear, the court appears to have allowed the full percentage limits in the statute, which come to $120 more than a flat two percent of the value of the estate. The maximum percentages for ordinary services under sections 633.197 and 633.198 are six percent on the first $1000 of the estate and four percent on the next $4000, or $220. If this first $5000 is computed at straight two percent, the amount would be $100, or $120 less than $220. In adding $120 the probate court evidently allowed a fee equal to the statutory percentage limits, believing that the services were worth at least that much.
We do not disagree as to the reasonable value of the services. But in his professional statement to the probate court Mr. Bittner stated he informed the beneficiaries at the outset the fee was two percent "and that is what they would be expected to pay." Under those circumstances and in the absence of intervening changes which do not appear here, the court should not have set a fee is excess of two percent. This is not because the services were not reasonably worth $120 more or because a contract existed for the amount of the fee. It is simply because Mr. Bittner told the beneficiaries they would be expected to pay two percent and administration then went forward; the fee may not exceed two percent *553 irrespective of the value of the services. We thus allow a fee of $6816.89.
MODIFIED AND AFFIRMED.